IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | |
| ) | COMPLAINT |
| MUELLER CO. LLC & IH SERVICES, INC. ) | |
| ) | JURY TRIAL DEMAND |
| Defendants. ) | |
| ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e et seq., and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to those female employees who were subjected to them. As alleged with greater particularly below, Defendants Mueller Co. LLC ("Mueller") and IH Services, Inc. ("IH" or "IH Services") discriminated against three female employees because of their sex, subjecting the women to sexual and other sex-based harassment, thereby creating and maintaining a hostile work environment because of their sex. For one woman, the hostile work environment resulted in her constructive discharge. Defendant IH Services, Inc. retaliated against two of the women when they complained about or would not participate in the sexual and other sex-based harassment. Defendant IH Services, Inc. retaliated against the women by subjecting them to different terms and conditions of employment, including by reducing their hours, assigning them to shifts that were less desirable, suspending them, and/or terminating their employment.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Alabama, and employment records relevant to such practices are maintained and administered in this jurisdiction.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) of Title VII, 42 U.S.C. Section 2000e-5(f)(1).

4. At all relevant times, including at least since May 28, 2018, Defendant Mueller Co. LLC (a) has been continuously a Delaware corporation, (b) has been doing business continuously in Alabama, (c) has been continuously registered with the Alabama Secretary of State to do business in Alabama, (d) has been continuously engaged in an industry affecting interstate commerce, and (e) has had continuously at least 15 employees.

5. At all relevant times, including at least since May 28, 2018, Defendant IH Services, Inc. (a) has been continuously a South Carolina corporation, (b) has been doing business continuously in Alabama, (c) has been continuously registered with the Alabama Secretary of State to do business in Alabama, (d) has been continuously engaged in an industry affecting interstate commerce, and (e) has had continuously at least 15 employees.

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Emily Conner, Misty Geckles, and Carmelita Hendrix filed charges with the Commission in which they alleged that Defendants IH and Mueller had violated Title VII:

   a. On April 12, 2019, Conner filed a charge alleging that Mueller had violated Title VII.

   b. On May 13, 2019, Conner filed a charge alleging that IH had violated Title VII.

   c. On August 13, 2019, Geckles filed a charge alleging that Mueller had violated Title VII.

   d. On August 13, 2019, Geckles filed a charge alleging that IH had violated Title VII.

   e. On September 15, 2019, Hendrix filed a charge alleging that Mueller had violated Title VII.

   f. On September 15, 2019, Hendrix filed a charge alleging that IH had violated Title VII.

7. The Commission timely notified each Defendant of the charges against it:

   a. On April 18, 2019, the Commission notified Mueller of Conner's charge against it.

   b. On May 25, 2019, the Commission notified IH of Conner's charge against it.

   c. On August 20, 2019, the Commission notified Mueller of Geckles' charge against it.

   d. On August 20, 2019, the Commission notified IH of Geckles' charge against it.

   e. On September 24, 2019, the Commission notified Mueller of Hendrix's charge against it.

   f. On September 24, 2019, the Commission notified IH of Hendrix's charge against it.

8. On April 6, 2022, the Commission issued to the parties to each charge a letter of determination.

   a. The letters to Mueller explained that the Commission had found reasonable cause to believe that Mueller violated Title VII by subjecting Conner, Geckles, Hendrix, and a class of women to a sexually hostile work environment.

    b. The letters to Mueller invited it to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

    c. The letters to IH explained that the Commission had found reasonable cause to believe that IH violated Title VII by subjecting Conner, Geckles, Hendrix, and a class of women to a sexually hostile work environment and by retaliating against Conner and Geckles for opposing sexual harassment.

    d. The letters to IH invited it to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The Commission communicated with each Defendant in an effort to conciliate and resolve the charges but was not able to reach a conciliation agreement acceptable to the Commission with either Defendant .

10. On July 20, 2022, the Commission notified each Defendant that the Commission had determined that any further efforts to conciliate that Defendant's respective charges would be futile.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. At all relevant times, including at least since May 28, 2018, Mueller has been North America's leading manufacturer and marketer of products and services used in the transmission, distribution, and measurement of water.

13. At all relevant times, including at least since May 28, 2018, Mueller has owned and operated a plant in Albertville, Alabama that primarily manufactures fire hydrants.

14. At all relevant times, including at least since May 28, 2018, Mueller has operated and maintained an internal video surveillance system that captures activity within the Albertville plant.

15. At all relevant times, including at least since May 28, 2018, IH Services has been a provider of facility management services, including janitorial services.

16. At all relevant times, including at least since May 28, 2018, Mueller has contracted with IH Services for the assignment of employees to work at the Albertville plant. Pursuant to this arrangement:

   a. Mueller directed IH Services to assign employees to work at the Albertville plant.

   b. Mueller directed that the employees should clean bathrooms, showers, locker rooms, and changing rooms at the Albertville plant that had been assigned for men to use to relieve themselves or to perform other actions that could involve the regular exposure of their genitals (each a "Men's Room").

   c. IH Services assigned employees, including female employees, to work at the Albertville plant.

   d. IH Services assigned at least one supervisor to work at the Albertville facility.

   e. Mueller and IH Services directed female employees to clean Men's Rooms.

   f. Mueller and IH Services made no efforts to prevent men from using a Men's Room while it was being cleaned by a female employee. Neither Mueller nor IH Services closed Men's Rooms while they were being cleaned by a female employee. Nor did either Defendant supply such female employees with signage or other equipment that would have directed men elsewhere while a Men's Room was being cleaned by a female employee.

17. Conner, Geckles, and Hendrix are women who were employed at the Albertville facility between May 28, 2018 and August 27, 2020.

a. Emily Conner was employed at the Albertville facility from August 21, 2018 through May 23, 2019.

b. Misty Geckles was employed at the Albertville facility from May 28, 2019 through August 5, 2019.

c. Carmelita Hendrix was employed at the Albertville facility from May 28, 2018 through August 27, 2020.

18. At all relevant times, including at least since May 28, 2018, both Mueller and IH Services have engaged in unlawful employment practices at the Albertville facility in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by subjecting Conner, Geckles, and Hendrix to a hostile work environment and to tangible employment actions (including reductions in hours, reassignments, suspensions, constructive discharges, and terminations) because of their sex and/or as retaliation for complaining about, reporting, and refusing to participate in the sexual and other sex-based harassment at the Albertville plant. For example:

a. When Hendrix rebuffed the advance of Mueller Employee No. 1 in 2018 and told him that she was in a relationship with a woman, Mueller Employee No. 1 asked her if he could watch them have sexual intercourse. Hendrix immediately reported this comment to IH Services' on-site supervisor. Defendants did not investigate this or discipline the harasser.

b. On January 23, 2019, Mueller Employee No. 2 entered a Men's Room that Conner was cleaning and told her, ""Damn girl, with a body like that you got it going on. You're fine as hell. Why don't me and you go into the stall?" When Conner rejected this advance, Mueller Employee No. 2 slapped Conner's buttocks. Conner immediately protested and left the Men's Room. Conner reported this incident to IH Services' on-site supervisor on

6

January 25, 2019, as the supervisor had been absent from the plant until then. Defendants did not investigate this incident or discipline the harasser.

c. On January 28, 2019, Mueller Employee No. 2 again propositioned Conner, who again rejected his advances. Mueller Employee No. 2 then grabbed Conner's buttocks once more. Conner immediately reported this incident to IH Services' on-site supervisor and a Mueller supervisor.

d. On January 28, 2019, the same day that Conner had complained about being sexually assaulted at the Albertville plant, Defendants retaliated against her. Conner was transferred to the less desirable overnight shift and her hours were reduced, which reduced her income. Conner was transferred to the overnight shift over her objections, as she feared the reduced presence of supervisors and security personnel in the plant overnight would make her vulnerable to further harassment.

e. Other male employees regularly targeted Conner for sexual harassment after learning of her complaint. They purposefully entered and used Men's Rooms while she was cleaning them. They also directed sexual remarks to her. For example, Mueller Employee No. 3 regularly commented on Conner's body. Conner immediately reported these incidents to IH Services' on-site supervisor. Defendants did not investigate these incidents or discipline these harassers.

f. In or around February 2019. Defendants began heavily scrutinizing Conner's work and disciplining her, including suspending her in March 2019.

g. Conner was constructively discharged on May 23, 2019, when she was no longer able to endure the sexual harassment and retaliatory acts.

h. In or around June 2019, a whiteboard in a publicly accessible room within the Albertville plant broadcast for approximately one week, "phrase of the week – It's hotter than a blind lesbian in a fish market." Hendrix complained to IH Services' on-site supervisor. Defendants did not investigate this or discipline the harasser(s).

i. In June 2019, shortly after Geckles began working at the Albertville plant, Mueller Employee No. 4 began making sexual advances toward her. Geckles told Mueller Employee No. 4 that she was engaged and not interested in his advances, but he persisted. Mueller Employee No. 4 also commented to Geckles that he had seniority at the plant and could do what he wanted without consequences.

j. On June 14, 2019, Geckles and her fiancé encountered Mueller Employee No. 4 while shopping at a local retailer. The next day, Mueller Employee No. 4 approached Geckles at work, forced a hug upon her, questioned why she was engaged to her fiancé since he was overweight, declared that he would steal her away from her fiancé, and demanded her phone number. Geckles refused this advance and immediately reported it to IH Services' on-site supervisor. Defendants did not investigate this incident or discipline the harasser.

k. On July 7, 2019, Mueller Employee No. 4 cornered Geckles in a hallway, grabbed her buttocks, asked her where she lived, and declared that he wanted to have sex with her. Geckles immediately reported this to IH Services' on-site supervisor. Defendants did not investigate this incident or discipline the harasser.

l. Geckles thereafter noticed that Mueller Employee No. 4 was arriving early to work to loiter around her and then following her home after work. Geckles reported these incidents to IH Services' on-site supervisor. Defendants did not investigate these incidents or discipline the harasser.

m. On July 18, 2019, Mueller Employee No. 4 attempted to rape Geckles within the Albertville plant. Mueller Employee No. 4 lured Geckles into a dark room under the pretense of a cleaning assignment. While Geckles was cleaning, Mueller Employee No. 4 blocked the doorway to the room and exposed his genitals. Geckles turned around to find Mueller Employee No. 4 blocking the doorway and holding his erect penis in his hand. When Geckles questioned Mueller Employee No. 4 about what he was doing, Mueller Employee No. 4 responded that he intended to "fuck" her and make her like it. Mueller Employee No. 4 then grabbed Geckles' hand and forced it onto his erect penis. Mueller Employee No. 4 then pushed Geckles face down onto a table and attempted to remove her jeans. Mueller Employee No. 4 was unable to remove Geckles' jeans because she was wearing a work belt. Mueller Employee No. 4 eventually ceased his efforts to rape Geckles because she continued to struggle and a nearby phone began to ring. Geckles immediately reported this incident to a co-worker. Geckles was unable to immediately report the incident to the on-site IH Services supervisor, because she was absent that day to attend her mother's funeral. However, Geckles reported the assault to her supervisor and Mueller management the next day. Defendants did not discipline the harasser.

n. On July 19, 2019, the very day that Geckles reported that Mueller Employee No. 4 had attempted to rape her at the Albertville plant, Defendants accused her of lying about the incident and suspended her for three days.

o. On July 20, 2019, Defendants transferred Geckles to the less desirable overnight shift over her objections. This reduced Geckles' hours and income.

p. On August 1, 2019, Defendants again suspended Geckles.

9

q. On August 6, 2019, when Geckles returned to work at the Albertville plant from her suspension, Defendants refused to let her work and sent her home.

r. On August 7, 2019, when Geckles called IH Services' on-site supervisor for an update about her status, the supervisor terminated Geckles.

s. As Mueller Employee No. 4 had predicted, Defendants did not discipline him for his attempted rape of Geckles. Instead, they fired his victim.

t. Hendrix has been subjected to regular sexual harassment and sexual remarks. This included frequent remarks from Mueller Employee No. 5 about women who have red ears as a result of performing oral sex. Other employees posted a comment on an employee bulletin board about a "cooter poot" and regularly referred to Hendrix as a "slit licker." Hendrix timely complained to her immediate supervisor and other managers at both IH Services and Mueller about this harassment. Defendants did not promptly investigate these incidents and did not discipline the harassers. Hendrix continued to suffer such sexually harassment until she left her job on or around August 27, 2020.

19. The effect of the practices complained of in paragraphs 16 through 18 above has been to deprive women of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

20. The unlawful employment practices complained of in paragraphs 16 through 18 above were intentional.

21. The unlawful employment practices complained of in paragraphs 16 through 18 above were done with malice or with reckless indifference to the federally protected rights of female employees, including Conner, Geckles, and Hendrix.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of sex, or which facilitates, condones or encourages employees to create a hostile environment based upon sex.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of their past and present unlawful employment practices, including requiring employees, managers, and officers to undergo training on preventing and recognizing sexual harassment and retaliation, providing multiple avenues for employees and customers to report sexual harassment and retaliation, and training managers and officers to promptly act to remedy sexual harassment and retaliation.

C. Order Defendants to make whole Conner, Geckles, and Hendrix by providing, as appropriate, compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

D. Order Defendants to pay Conner, Geckles, and Hendrix punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial.

E. Order Defendants to make Conner and Geckles whole by providing appropriate backpay with prejudgment interest, and appropriate compensation for the past and future pecuniary losses resulting from their unlawful employment practices, including but not limited to relocation expenses, job search expenses, and other pecuniary losses, in amounts to be determined at trial

F.     Order Defendants to provide other affirmative relief to Conner and Geckles necessary to eradicate the effects of Defendants' unlawful employment practices, including but not limited to reinstatement or front pay in lieu thereof.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Gwendolyn Young Reams
Acting General Counsel

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE
Washington, DC 20507

Marsha Lynn Rucker (PA 90041)
Regional Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, Alabama 35205
Tel.: (205) 651-7045
marsha.rucker@eeoc.gov